and FTL Capital Partners, LLC. Good morning. Good morning, Your Honor. And may it please the Court. Jennifer Bennet on behalf of Mr. Walters. Mr. Walters suffered several injuries that this Court has already held constitute concrete harm sufficient to support Article 3 standing. First, FTL reported a negative account on his credit report, a report that there's no dispute was shared with others. Under Loesch, under Pedro, under Pinson, that alone is a concrete injury sufficient for standing. But it's not the only harm here. The negative report caused Mr. Walters to be unable to get a loan for a truck, to be unable to refinance his house with a lower interest rate. Mr. Walters spent time and money disputing the loan, which again, under Pedro, under Loesch, under Pinson, those are all concrete harms. And he suffered emotional distress. Mr. Counsel, the question is whether the failure to disclose the violation of the appeal, the failure to disclose the cause of those harms. And if you never see what is disclosed or isn't disclosed in this case, how can that possibly injure you? Yes, Your Honor, that's exactly right. And here there are two reasons that Mr. Walters failed to receive the information. And FTL doesn't dispute that two things had to happen for him to get the information he needed. FTL had to include it in the paperwork that it armed its contractors with. And those contractors had to deliver that paperwork. A failure on either front would cause the harm. As then Judge Alito... No, no it wouldn't. If FTC didn't include it, it doesn't matter if it's not delivered. It requires both. Your Honor, that's exactly right. And on that count, that's exactly the situation that calls for this multiple sufficient causation analysis. Because also, you know, because FTL didn't include the information, if FAST-AC delivered the documents, again, it wouldn't matter because the relevant information wasn't in them. So the harm occurred, and the harm again is that FTL funded a loan without Mr. Walters receiving the information he needed to know whether he could afford that loan. At the time that harm occurred, there were two causes of that harm. FTL didn't include that information in the disclosures, and its contractor didn't provide those disclosures to FAST-AC. Let me address this hypothetical. So let's just talk about like a normal tort. So I'm walking across the road and two cars run a red light. The first car hits me and injures me. Can I sue the driver of the second car on the theory that if the first car hadn't hit me, the second car would? No, Your Honor. And the reason for that is because there's a different rule when there's only one cause of an event happening at the time. Okay, well why is this not that hypothetical? Because FAST-AC causes the injury, or allegedly causes the injury through fraud, and your argument is that had they not caused the injury, the injury still would have happened by what FTL did. Isn't that the same argument that I would make about the second car? That had the first car not hit me, the second car would have. So they're both causes? No, Your Honor, because in the car situation that you're discussing, there are events that are separated in time. So by the time the first car hit you, the second event, the second car hitting you couldn't happen. Here, the event we're talking about is FTL issuing a loan, and Mr. Walters not having the information he needed to decide whether that loan was does it matter if he's an agent or not? It doesn't matter. Agency is an entirely separate and independent basis for standing. So even if you don't agree with me on multiple sufficient causation, they're still standing here because of agency. And just to finish my answer to Judge Brasher's question, and then I'll move on to agency. So your question in terms of the car accident is very much like, you know, somebody has cancer, for example, they'll die in 10 years, but then they're shot tomorrow. We wouldn't think the cancer is the cause, you know, we wouldn't have liability for the cancer because we think of those really as two separate events, being death by shooting tomorrow versus death in 10 years by cancer. And the accident example that you're giving is really just that compressed. There's still two different events in time. On the other hand, if, you know, they were going to die at the exact same minute and they're shot at the same minute. So you're shot and you're going to die at the same time. That's one event. Both are causes. That's exactly what's happening here. So your position is then, I mean, and I just find it easier to address that in sort of normal tort sort of things instead of what we're talking about. But I mean, so your position would be if I'm going to die of cancer tomorrow, but at the instant that I'm going to die of cancer, I'm also shot that you could bring a lawsuit against whatever caused my cancer and the person who shot me because they're both causes. Okay. Once again, how does that fit these facts where you've got this arguably intervening third party that intervenes and causes the injury so that you never get to the second car coming through the intersection? Right. I mean, I think that was Judge Karn's question. You know, I get your point that had that intervening actor not been there, maybe you still would have been injured. Maybe they was there. So I'm having trouble conceptually understanding how there's standing to sue FTL given the intervening acts of FAST-AC. Sure. Because here, I want to give an answer situation. For example, there's one event, the one event, the single event that happened at one time is FTL issues alone without Mr. Walters having sufficient information. And there's two causes of that. Both FTL didn't provide sufficient information and FAST-AC didn't provide the disclosure. So there's one event. It's as if the gunshot and the cancer were going to cause the death of the single event. So I mean, you're hypothetical, I think. I'm sorry. Go ahead, Judge Karns. No, I think you were perhaps asking the same thing. That's not, I mean, you say two events at one time. No, it isn't. It just simply isn't. They didn't make the disclosure. And the other actor didn't give him a copy of it. I apologize. I think my answer may have been confusing. The event we look at is the time the harm occurred, if you look at all of the tort causation principles. And so the time the harm occurred is when FTL issued alone without him having the disclosures. And I just want to take a step back and talk about... But how was that harm if he never got any disclosures? In other words, you're saying that if you go to a lender and the lender says, we'll give you the money, give you the money, that's the end of it right there if there's not an accurate disclosure at that time. That's correct, Your Honor. That's the law and that's what Mr. Walters alleges harmed him. But even if you disagree with me on that point, there's an entirely independent basis to find standing here. And this court doesn't even need to address the difficult questions about how multiple sufficient causation applies in the standing context. And that separate basis is that a rather fast AC was acting on behalf of FTL. And agency here requires three things. It requires that a principal acknowledges that the agent will act for it. It requires that the agent acknowledges the same thing. And it requires a right to control. Now, FTL doesn't offer any real argument that there's insufficient evidence at the summary judgment stage on the first two. You know, there's a contract between FTL and FastAC for FastAC to offer loans on FTL's behalf. And we know that it did that. FastAC did, in fact, offer loans on FTL's behalf. And FTL accepted those loans. There's no real dispute that there's some agreement here for FastAC to act on FTL's behalf. The only prong of agency that FTL really contests at all is the right to control. But even there, there's overwhelming evidence that, at the very least, creates a dispute of fact on that. So, you have FTL vetted FastAC. FTL trained it. FTL had FastAC submit loans through FTL's own system. FTL gave FastAC its marketing materials and allowed FastAC, rather, to use the FTL logo. FTL controlled what loan products FastAC was able to offer and how it could submit a customer application. FTL provided those documents. It determined the terms and conditions of the loan. It determined whether a customer could take out the loan. And when a loan is completed... Let me ask you what the district court, to address what the district court said on this. The way I understood the district court's, the way the district court addressed this was to say, look, FastAC didn't violate TILA. So, even if it was the agent of FTL, all the acronyms running together, FTL, FastAC didn't violate TILA. So, there's no liability, vicarious or otherwise, against the principal, even if we're acting as an agent. What do you say about that? So, two answers to that. The first is that the obligation under TILA is for the lender to their district court cases here. But the vast majority of courts say that whether that's directly or through an agent, if you use an agent to do your disclosures, you still haven't disclosed. That's why there's vicarious liability under TILA. But the second answer to that is that standing is a separate inquiry from a question of a statutory violation. So, on the merits, maybe the district court later on or a jury later on could hold that this doesn't violate TILA. But the question is, did the conduct here cause Mr. Walters' harm and who is responsible for that conduct? And so, if FastAC is FTL's agent, it is responsible for, FTL rather, is responsible for that conduct. And that's enough for standing, regardless of whether you think the TILA claim stands or not. As I understand it, what the district court in fact held was that Mr. Walters hadn't sufficiently alleged agency in his complaint. But that can't be right. There's a whole claim about agency. And specifically in the TILA, there's another allegation of agency. That's more than enough for the fair notice requirement that Rule 8 has. And in fact, we know that FTL had fair notice because it moved for summary judgment on the TILA claim based on agency. And so, there's plenty of evidence here that Mr. Walters satisfied the very low bar of giving FTL notice of the agency claim. I see that my time has expired. So, if there are no further questions, I'll reserve the rest for rebuttal. Thank you, Ms. Penn. I will give you your five minutes. Thank you. Good morning. May I please report? Richard Landon on behalf of APALE. Gary Walters, in this case, alleges that he was injured by the contents of the lending disclosures included in my client's credit agreement. Specifically, that the contents of those disclosures prevented him from making an informed decision when applying for credit for the ductwork to be performed by FastAC. But Mr. Walters admits that he never saw the contents of those disclosures before applying for credit. The contents had no bearing on his decision. In fact, this is even more clear, more apparent by the fact that days after signing the agreement, he decided that without seeing the content of the disclosures, he couldn't afford the ductwork and he canceled the job with FastAC. When he finally got a bill on the credit agreement from my client, still he had not seen the disclosures. He told my client that he wanted to cancel that agreement because the work was never done. There is no factual basis to say that the content of the lending disclosures, which Mr. Walters never saw, inflicted any injury upon him. And the district court correctly granted summary judgment because Mr. Walters suffered no injury in fact and had no standing for the truth in lending claim. I want to touch on the tort example that Judge Brasher mentioned. I would, instead of referring to two cars, the analogy that comes to mind for me is the idea of a pedestrian walking across the street and a bus hits him. And he says, well, had the bus not hit me, I would have fallen in the open manhole on the other side. Now, I understand that opposing counsel claims that that analogy is inapposite because she believes that there were simultaneous causes happening at the same time. But this is just not true. The content of those disclosures could not have simultaneously caused an injury if he never saw them. One hypothetical that makes this entirely apparent is, you know, the party's dispute whether there should have been an open-ended or closed-ended disclosure in this law. But isn't his argument, and maybe I'm incorrect, that if he would have been provided with those documents, then he would have known what the cost, the true cost, would have been? His argument is that had he been provided with closed-ended disclosures, he would have known the true cost. Correct. Right. And then he then would not have signed. That is what he says. But again, to present a hypothetical that shows how these are not simultaneously, simultaneous causes, if SEL had included closed-ended disclosures in the law, they still would not have impacted his credit decision because he never saw the disclosures. Right, but what he's, I mean, maybe I misunderstood the complaint, but my understanding of the complaint is that he's saying your client was required to provide those documents. Because he did not receive those documents, he did not know the true cost of the work. He also, I guess, didn't also know how to cancel, that he had a certain amount of time because I think that's supposed to be in the disclosures as well. Correct? I don't know about that second point, but I agree with your characterization that he, you know, he believes that the disclosures should have been there to give him full knowledge of the law. Yes. What do you say about the agency argument? And I guess this sort of goes to what Judge Legault was talking about. I mean, if he's supposed to get these disclosures and FAST-AC is actually negotiating the loan, why isn't that enough to link the lack of disclosure to your client? I have a couple responses to that, Your Honor. The first is that I don't believe that this is not actually briefed at summary judgment. And the district court judge acknowledged this in the motion for reconsideration. He noted that an appellant had made no arguments about my client being vicariously liable under TEMA during a summary judgment briefing, and they only raised this after he had dismissed the claim on standing grounds. It was an after acquired argument that he believed was not appropriate at that time. So I would posit that that's not a proper basis for this court to decide on appeal. One of the reasons why is that there was no briefing on whether vicarious liability is a viable theory under this provision of TEMA. The district court cited case law saying that there was disagreement. There was no briefing below for the parties to address whether that's even a valid theory. I would also argue that the complaint cannot support the argument that they are trying to advance now on vicarious liability. And the reason is simple. Appellant does not argue that FAST-AC violated TEMA. You can't construe the complaint to hold FTL vicariously responsible for a violation of TELA that is not alleged in the complaint. I was just going to say, I mean, I just, I don't know if that's true. And I would ask the other side to address this too. So I'm looking at count four of the complaint that is captioned FTL's liability for FAST-AC's illegal conduct. You know, complaints like this drive me but it's a count and it talks about how FTL trained FAST-AC's employees and FTL depended on FAST-AC to do this. And, you know, basically they're making sort of agency allegations under count four. So, and then pay a paragraph. This is the amended complaint. So maybe I'm looking at the wrong complaint, but it says as a result, FTL is vicariously liable for the harms and losses that FAST-AC caused the plaintiff. I agree that there's no dispute that for state law claims, but the issue is whether there is standing for the TELA. Right. But in the, in Mr. Walters affidavit in support of summary judgment, and he goes through this whole discussion about, you know, Mike convincing him to go to finance with a company called FTL. He didn't receive, I didn't receive the financing disclosures I should have received. I relied on Mike's statements in choosing to finance with FTL. Had I known Mike lied, I would not have financed with FTL. Had I received all the financing disclosures, I would not have agreed to finance with FTL. I mean, there's, you know, more and more in this affidavit. I mean, so like the idea that there wasn't an idea, an argument made about agency at summary judgment is just not accurate. I mean, that's just an affidavit. You're making a distinction. There was discussion of agency. I mean, they allege agency for the state law claims. But again, there is no allegation in the complaint that FAST AC or Mike violated TELA itself. And for my client to be vicariously liable under TELA, there has to be the agent violating TELA. I see. So what you're saying is with the account for which alleges vicarious liability, alleges vicarious liability for FAST AC's conduct, but there is no TELA claim against FAST AC. So there is no vicarious liability claim against you for FAST AC's conduct to the extent TELA would be involved. That is correct. That is what I am arguing. I would also posit that the judgment, while many of these standing cases are decided on a motion to dismiss and in the factual record, we don't believe. Can I ask you a question? I thought in the record there was evidence presented that the little computer processor, I guess, that Mike used was a piece of equipment that was provided by FTL. No? I do not know the answer to that, Your Honor. I'm sorry. I don't know whether that is in the factual record or not. But I do know that Mr. Walters, I mean, Mr. Walters testified in his deposition that he did not believe that Mike was acting on behalf of FTL. I mean, we believe that the factual record shows that there is never any point where Mr. Walters believed that Mike was an agent of FTL at the time he was agreeing to the credit agreement. I mean, so it is under judgment. We do believe that the record is insufficient to create a material dispute of fact there. So I guess you would agree with me. I mean, I think this is fairly obvious, but I mean, and a company can only act through its agents, right? I mean, there is no such thing as a company acting without an agent to act for it. For a corporation, yes. Right, yeah. So to the extent, and this is just maybe this is academic, but to the extent the plaintiff here is saying Mike violated the law, Mike is an agent of FTC. I mean, isn't the allegation that FTC violated the law through Mike the same way FTC would violate the law through some employee of FTC? FTL. I'm sorry, FTL, yeah. Again, I agree with that, but the allegations of Mike's violation of the law are state law claims. It's not a TILA allegation against Mike and FAST-AC. It is not clear that the provision that they are alleging under Count 8 is violated by the servicer not presenting the documents that were required to be included with the provision. I guess the trouble I'm having, and maybe you could walk me through it, is when you read his testimony, whether it's in the depot or the affidavit, and he talks about Mike, I keep wanting to call him by last name, but I only know him as Mike. Mike did not, you know, provide the financing statements that he should have received. The implication is, is that because Mike was an agent of FTL, and so therefore there's an agency relationship, and he should have then provided the financial disclosures. Well, Your Honor, that's why agency requires some amount of control from the principal over the agent. In this case, FTL included disclosures in the credit agreement. There's a dispute over whether they were the correct ones or not. There is no evidence that FTL had the ability, let alone exercised, control over Mike showing those disclosures to Mr. Walters in this case. I mean, I understand Your Honor's concern, but... Yes, I guess my concern is that it seems to me, and I don't know if this would be an issue of fact that would be something that a jury would make a determination on, but if you have someone who is presenting and trying to sign someone up for financing, the implication is that they're acting as your agent because they're trying to get you to sign and finance with a particular company. If you want to make sure you have control and that it's being done properly, then I would say, I will put you in touch with someone who can finance this work for you, and then let me know if it happens, and I'll come back, and we can we can make this happen. And then that person has nothing further to do, and you then have the relationship, and you control everything. But by giving it to someone else, they control then the narrative. I understand what Your Honor is saying. I think that, you know, an important distinction here is that Mike is not, he's not some generally appointed financing agent who is, you know, authorized, let alone represented to be acting on behalf of FTL's financing consideration. He is the service provider who has a contractual right to help submit applications to FTL, and I don't believe that that's sufficient for agency. What Your Honor is describing would essentially create a blanket rule that any service provider that has, you know, has the ability to submit a financing application to FTL is automatically going to be their agent. And I don't believe that, I don't believe that common principles are that broad, and I don't believe that there's any case law under the Truth in Lending Act that suggests that that is, you know, an extended agency theory that is relevant to the disclosure analysis. And again, this is why I don't believe that this is an appropriate decision for this Court, because this has not been fully argued below. It wasn't raised in a timely fashion below. It was raised for the first time on a motion for reconsideration. But I guess my question is, so when this, and I'm looking at document 1049, which I believe is the FTL finance, the customer credit application. So when that is transmitted, this information, that's done through the computer, correct? Is that how it was done, right? Yes. Okay. So when this is transmitted, then what happens? Does FTL need to look at it? Does it need to run it? Or is it just automatic? I believe that they have to review the application at that point. I don't, I'm not as familiar with the details of the process after the... So then when would FTL have an obligation to provide the TILA information? Well, the TILA information is supposed to be provided with the application itself. It's supposed to be presented to the applicant before they apply. Right. So that sort of begs the question, which is, you then have this person acting as your agent and signing them up. So at this point, they're really employed, or they're working, they're wearing two hats. They're wearing the hat for FAST-AC, he wants to do the duct work, but now he's wearing the hat for FTL, and I'm going to get this guy to sign on this credit agreement without giving them the disclosure that's required. Yes. And I mean, his contractual right to be able to do that was subject to his agreement to comply with all relevant laws. I mean, he is, again, there is no ability for FTL to control his actions. All they can do is impose a requirement in the contract that he present the information to the applicant. FTL could control it because it could say, you then can sign up and customers can contact us, FTL, and speak to our authorized representatives. It could. I agree with that. As opposed to having, I guess, a rogue contractor pretend to do these credit agreements without giving the information that's required. I agree with that, but I still don't believe that the facts show that there is the sufficient elements of that agency relationship. Okay. Thank you, unless you have any other questions. Counsel, before you. Counsel, before I sit down, I have a technical question, but who knows whether it will be important to you or not. The district court summary judgment were rescinded, dismissed for lack of standard. Then apparently there was a motion for clarification, observation filed, and on page nine of that order denying it, it said, dismissal for lack of standard standing are by definition without prejudice. Court discussing that said, it goes without saying that dismissal for lack of standing is without prejudice because standing is jurisdictional and does not implicate the merits to the extent that Mr. Walter would like affirmation of this well-established law in abundance. I caution the court of lies that such argument does not require recruit reconsideration or amendment of the underlying order. In other words, the district court agreed, and we all would, I think, that dismissals for lack of standing don't constitute judgments on the merits and should not be dismissed with prejudice implied or otherwise. That was the district court's intent, but when you look at the actual judgment that the clerk entered, it said, a decision by the court, this actually came before the court, this decision had been rendered, it is ordered to judge that the court's order entered on page 322. Judgment is in place of a sentence. The correct order would have been, the correct judgment, it would have been, the appeal of the claim is dismissed for lack of standing, would it not, and could it be one in six? I believe that as a technical matter, your honor, you're correct, that's probably what the judgment should have said, yes. And it makes a difference, it does. It makes a difference on the ratio of the matter of fact. I agree. They came in with another complaint and clarified things and put some of the things in the complaint that we are hearing the arguments that are there, they're just not clear, then dismissal without prejudice would matter. I suppose that is correct, your honor. So we should vacate the amendment with instructions for the district court to cure the judgment entry that the clerk did. Well, if that clarification is necessary, I suppose the court could do that. I'm not sure, you know, based on the judge's statement in the order on reconsideration, he made it all clear. I'm not sure that there's, I'm not sure that that's enough to... The judge must count to the extent of any difference between a order and a judgment, it's the judgment that comes by. Sure, sure. I mean, I think that we would object to that clarification. Thank you. Thank you, counsel. Ms. Bennett, you have five minutes for rebuttal. Yes, your honor. I just want to make three quick points. The first is when we're talking about vicarious liability for a TILA claim, here what the complaint alleges is that the liability is that FTL did not disclose information that Mr. Walters needed to know the true cost of the loan. And so the allegation about how FAST-AC is involved in that is because FAST-AC, acting on FTL's behalf, did not make that disclosure. What FTL's argument here would mean is that so long as both the company didn't put the information in its documents and it had its contractors not give those documents, there's no TILA liability and no standing. That just can't be right. It can't be that the more misconduct you do, the more you're absolved of a TILA violation. The second point I want to make is that we are talking about standing here, not about the merits. And I want to go back to the point of this inquiry, the point of the standing inquiry, which is not to figure out whether FTL is ultimately going to be liable to Mr. Walters on the merits, but instead to figure out whether there's a case or controversy here. That's it. And that's why concrete harm is really the focus of this court's standing analysis, because what concrete harm does is it ensures that the plaintiff has a personal interest in the case. Something is at stake. And that's why we can invoke the federal court's jurisdiction. What traceability does, all it does is it ensures that the harm that the plaintiff alleged is not so far removed from the defendants that the plaintiff has sued that the court can't do anything about it. And that's why the traceability analysis is often phrased as, is it traceable to the defendant or some third party not before the court? Are the people who the plaintiff claims harmed him not before the court at all, so the court can't do anything? That's not the case here. There's no argument here that some company that Mr. Walters didn't sue caused him harm. The argument here is that FTL acting through FAST-AC caused Mr. Walters harm by not giving him the information he needed to know what the true cost of the loan he took out was. And the last point I just want to make is on agency. There are really two points there. One is FTL argues that the company, rather, FTL argues that FTL did not control FAST-AC. The agency question is on the right of control. Could FTL have exercised control over FAST-AC's conduct, whether or not it did? And it's on summary judgment. So the question is specifically, is there enough evidence in the record taken in the light most favorable to Mr. Walters that a reasonable juror could find that FTL could have done that? Is there some dispute of fact? That is certainly true here. FTL controls the contract terms. FTL controls the loan conduct. Certainly, if it wanted to, it could have told FAST-AC exactly how to give people these disclosures. That's all that's necessary here. And even if you disagree on that, Mr. Walters, after the loan was issued, he gets a letter from FTL that says, you owe this money. He says, wait, wait, wait, I cancel this transaction. And this money you say I owe is way more than you told me I was going to have to pay. He calls FTL, and he says, I didn't get these disclosures, and they didn't do the work. And FTL still continues to try to collect on the loan. So that's ratification. So even if you think maybe Mike didn't have the authority to do what he did before the fact, there's certainly sufficient evidence that after the transaction was entered that FTL ratified that conduct by continuing to collect on the loan. And so for those reasons— And they also sent it to the credit collection agency. Exactly right. So they continue to try to collect on this loan even once they knew, or certainly at least a reasonable juror could find, even once they knew all of the facts underlying Mike's conduct. And if there are no further questions, we ask this— Can I ask you a question about your, I think it was your second point. I want to hear all three of your points. Your second point was about some party, independent party, not in front of the is it seems very odd that the standing analysis for you to sue FTL would somehow turn on whether you've also sued FAST-AC, right? I mean, if it's an independent third party, I realize that it's certainly more problematic if that independent third party is not in the case. But why should it matter if you've also sued that third party when we're talking about standing to sue party A? I apologize, Your Honor. I didn't mean to suggest that there wouldn't be standing if Mr. Walters hadn't also sued FAST-AC. There would be because here FTL, as Judge Lagoa pointed out, FTL is acting through FAST-AC. So there's— Yeah, so on your agency argument, I get your agency argument. It's a separate argument from the argument that you're making about redressability and causation. Why should that matter at all? I mean, just don't think it should matter? So actually, you take back point two? The point of point two is just to show the reason it's often framed like that, I think, shows the purpose of the inquiry. And the purpose of the inquiry is to ensure the court can do something. And there are a number of cases in which you're not sure which defendant caused the harm and which is unclear, not just at the factual stage or the complaint stage, but even until trial. And so if you bring all of those people before the court, the court has standing. And so it may actually— I do think there are cases in which it may matter. It doesn't matter here. But you don't want the standing inquiry to be determined on the merits. If the standing inquiry up front was, you know, we're going to take all of these people individually. We know we have power to redress the harm against someone. But what we're going to do is divide up the defendants individually and do a really fine-grained analysis on the merits about their liability before we have the facts, before a jury has looked at them. That's going to push all of the merit inquiry to standing. And the only reason we have a standing inquiry is just to assure ourselves, as there's a case here, that the court can do something. And so the proper thing to do, if on the merits, FTL doesn't think there's causation, would be to move to summary judgment on the merits or to move to dismiss on the merits. It wouldn't be to import that inquiry into standing. Thank you. Thank you. Thank you, Ms. Pennant. Thank you, Brooke. Ms. Pennant. Oh, Ms. Pennant, I'm sorry. Judge Hines has a question. That's okay. If we disagree with you and rule against you on standing, are you satisfied that the For the reasons you gave, I think to avoid possible problems in the future, if you disagree with us on standing, I think it would be great if the order ordered the court to reform the judgment to comport with the order. Yes, Your Honor. Thank you. Thank you both. A very interesting argument. I appreciate your briefs as well. Okay. Yeah, this is the same one. Valerie, I think this is supposed to be registered. Valerie, let's take a ten-minute recess. Judge Hines, we're waiting for the lawyer to join us by recess. Oh, no, he made it. It's fine. It's okay.